SHONGO v. SHONGO et al.

(Erie County Court.   March 11, 1915.)

1. INDIANS ☞27(7)—ACTIONS—APPELLATE JURISDICTION—COUNTY COURT.
   Laws 1914, c. 508, amending Indian Law (Consol. Laws, c. 26) § 50, so as to permit an appeal from a determination of the Council of the Seneca Nation to the County Court, is valid.
   [Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

2. INDIANS ☞27(7)—JURISDICTION OF INDIAN COUNTRY—COUNCIL OF SENECA NATION.
   Under Indian Law, § 50, authorizing an appeal from the Peacemakers' Court of the Seneca Nation to the Council of the Nation, the Council had the power to determine whether an appeal had been taken.
   [Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

3. INDIANS ☞27(7)—ACTIONS—APPELLATE JURISDICTION—COUNTY COURT.
   Under Laws 1914, c. 508, authorizing review in the County Court of a determination of the Council of the Seneca Nation on the evidence taken in the Peacemakers' Court, the County Court has power to review a determination of the Council that an appeal was not properly taken from the Peacemakers' Court.
   [Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

4. INDIANS ☞27(7)—JURISDICTION OF INDIAN COUNTRY—PROCEDURE.
   Under Indian Law, § 50, providing that an appeal may be taken to the Council of the Seneca Nation from the Peacemakers' Court, by serving on the adverse party and on the Peacemakers' Court a notice of such appeal, a notice of appeal signed by two of the defendants, and followed by the name of the attorney for defendants in typewriting, with the words "Attorney for Defendants," is sufficient as to defendants who did not sign.
   [Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

5. INDIANS ☞27(7)—JURISDICTION OF INDIAN COUNTRY—PROCEDURE.
   Indian Law, §§ 47, 48, 53, providing that each entry in the record of Peacemakers of the Seneca Nation shall state the amount of costs and to whom allowed, that the fees shall be fixed by the Council and the Peacemakers shall award costs to the party against whom the determi-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nation is made, and the marshal shall be entitled to the same fees as are allowed by law to constables in Justice Courts, contemplate that the Council of the Nation shall fix certain costs and fees applicable to all cases, and that the Peacemakers are to fix the costs and fees in each action on the basis of the schedule fixed by the Council.

[Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

6. INDIANS ☞27(7)—JURISDICTION OF INDIAN COUNTRY—PROCEDURE.

Rules and practice of the Council of the Seneca Nation, providing that, to perfect appeals from the Peacemakers' Court, all costs of the Peace-makers' Court must be paid according to a certain schedule, have no legal binding force until the costs have been properly fixed according to the provisions of the Indian Law.

[Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

7. INDIANS ☞27(7)—JURISDICTION OF INDIAN COUNTRY—PROCEDURE.

An allowance of costs in the Peacemakers' Court of the Seneca Nation of $5 for complaint, $4.50 for first and second adjournments, $5 for one day's trial, and $21.20 marshal fees, is so exorbitant that their payment cannot be exacted as a condition of appeal to the Council of the Nation.

[Ed. Note.—For other cases, see Indians, Dec. Dig. ☞27(7).]

Action by Moses Shongo against Howard J. Shongo and others. From a judgment for plaintiff, defendants appeal. Motion to dismiss appeal denied, and motion by appellants for further return granted.

Leroy Andrus, of Buffalo, for appellants.

Robert E. Congdon, of Gowanda, for respondent.

LAING, J. This is a motion on behalf of the plaintiff and respondent to dismiss the defendants' appeal, and a motion on behalf of the defendants and appellants to compel the making and filing of a return on the appeal herein.

[1] The first ground upon which the motion to dismiss this appeal is made is that the Legislature had no power to pass chapter 508 of the Laws of 1914, amending section 50 of the Indian Law, so as to permit an appeal from the determination of the Council of the Seneca Nation to the County Court. The appellant challenges the right of the Legislature to give to this court authority to pass upon a final determination of the Council of the Seneca Nation.

It is not proposed now to go into an exhaustive discussion of the question raised by this motion. There have been many decisions of the courts of this state dealing with the status of the Indians and their relation to the state and to the United States. Some of these decisions are quite recent, and several of them contain much interesting history and discuss questions closely related to the question involved in this motion.

The most recent decision of the Court of Appeals is People ex rel. Cusick v. Daly, 212 N. Y. 183, 105 N. E. 1048, Ann. Cas. 1915D, 367. In the opinion in that case it was held that the courts of this state had no power to try an Indian for the offense of assault with intent to kill, because that is a crime specified in section 328 of the United States Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1151 [Comp. St. 1913, § 10,502]), and the United States by that section having

exercised jurisdiction over the crime, the power of the state must yield to the paramount authority of the federal government.

The opinion in that case discusses at some length the question as to whether the state or the general government has the power to legislate with regard to the New York Indians. Werner, J., writing the opinion, recognizes the fact, as pointed out in several other decisions, that the status of the New York Indians toward the state is not the same as the status of that of other Indian tribes or nations toward the states within whose boundaries their respective reservations are located. But notwithstanding this fact he inclines to the view that the New York Indians are the wards of the nation rather than the wards of the state, and with some hesitation he concludes that in the case under consideration the state courts had no power to try the defendant. The opinion concludes in this language:

"Even if we assume that, in the absence of federal legislation, the state has the most ample power to legislate for the Indians within its borders, there seems no escape from the conclusion that when Congress does act the power of the state must yield to the paramount authority of the federal government." Loomis v. Lehigh Valley R. R. Co., 208 N. Y. 312, 101 N. E. 907. "Congress has exercised its power in respect to the crimes enumerated in section 328 of the United States Criminal Code, and the crime for which the relator has been arrested and held is among those therein set forth. For these reasons we think that the jurisdiction of our state courts must give way before the higher authority which this statute vests in the federal courts."

It will thus be seen that the case of People ex rel. Cusick v. Daly leaves open the question now under consideration. In the absence of an adjudication by the Court of Appeals, the decisions of the lower courts must furnish the authority for the disposition of this motion. It is my opinion that the cases of Jimeson v. Pierce, 78 App. Div. 9, 79 N. Y. Supp. 3, Peters v. Tallchief, 121 App. Div. 309, 106 N. Y. Supp. 64, Matter of Printup, 121 App. Div. 322, 106 N. Y. Supp. 74, Hatch v. Luckman, 155 App. Div. 765, 118 N. Y. Supp. 689, 140 N. Y. Supp. 1123, Silverheels v. Maybee, 82 Misc. Rep. 48, 143 N. Y. Supp. 655, George v. Pierce, 85 Misc. Rep. 105, 148 N. Y. Supp. 230, and People ex rel. Jamerson v. John, 80 Misc. Rep. 418, 141 N. Y. Supp. 225, together with Seneca Nation v. Christie, 126 N. Y. 122, 27 N. E. 275, and Johnson v. Long Island R. R. Co., 162 N. Y. 462, 56 N. E. 992, are authority for holding that the Legislature had ample power to pass chapter 508 of the Laws of 1914.

In Jimeson v. Pierce, cited above, Williams, J., says:

"For many years the Legislature has passed laws for the protection of the rights and property of these Indians and the enforcement of such rights under the laws so passed. We see no reason why such laws should not be regarded as valid, and should not be enforced. While it has been frequently held that Indians cannot come into our courts and bring actions, in the absence of acts of the Legislature enabling them to do so, yet it has always been held that they can do so under enabling acts when they have been passed."

The above language is quoted with approval by Kruse, J., in the case of Peters v. Tallchief, 121 App. Div. 309, 106 N. Y. Supp. 64, in a case involving the jurisdiction of the state courts to entertain a summary proceeding under section 5 of the Indian Law.

In the Matter of Printup, 121 App. Div. 322, 106 N. Y. Supp. 74, the court held that the Surrogate's Court had jurisdiction to grant letters of administration on the estate of an Indian under section 5 of the Indian Law, if a case came under the provisions of that section.

In the case of Hatch v. Luckman, it was held that the Surrogate's Court of Erie County had jurisdiction to issue letters of administration upon the personal estate of a Tonawanda Indian, and in the course of the opinion Wheeler, J., says:

"The law of this state is supreme, and the Tonawandas, we think, can claim no sovereignty of their own superior to that of the state. The state from time immemorial has assumed to control and direct their affairs, and legislate in reference to them, and its authority so to do has never been doubted or questioned. Where the Indians assert any peculiar rights or privileges, they must find authority for them in the legislation and laws of this state, and not by reason of their peculiar customs, or tribal existence from immemorial times. Such sovereignty as they formerly possessed, we think it may be safely asserted, has at this time been merged and lost in the greater sovereignty of the state, under which they must look for protection of life and property."

In the case of Silverheels v. Maybee, 82 Misc. Rep. 48, at page 52, 143 N. Y. Supp. 655, at page 657, Laughlin, J., says:

"The interesting and learned arguments presented by counsel for the defendant in support of his contentions that the provisions of the Indian Law in question are unconstitutional and void, that the court is without jurisdiction, and that the Legislature has only authorized the enforcement in the state courts of orders, directions, and judgments for the recovery of money, would merit an opinion, if there were no precedents controlling upon the trial court; but it appears that all of those questions have been authoritatively decided adversely to the defendants."

In the case of George v. Pierce, 85 Misc. Rep. 105, 148 N. Y. Supp. 230, it was held that under section 5 of the Indian Law the courts of this state have jurisdiction to try and determine disputes between Onondaga Indians as to the possession of lands lying within the boundaries of the reservation.

During the early history of the state it made many treaties with the different Iroquois Nations, and from an early date down to the present time it has passed and enforced laws for the regulation of the Indians and their property. As time has gone on the remnants of the Iroquois Nations have come more and more under the control of the state, and their lives have been more and more directed and regulated by the laws and courts of the state. We now have, as a part of our Consolidated Laws, a chapter known as the "Indian Law," and the trial before the Peacemakers' Court and the appeal therefrom to the Council of the Nation in this case are supposed to have been had and taken under the provisions of this Indian Law. The constitution of the Seneca Nation of Indians presented on this motion was ratified by an act of the Legislature of this state. The general government has recognized and acquiesced in the exercise of the authority over the Indians by the state of New York. The Indians themselves have recognized the authority of the state of New York by entering into treaties with it, and by appealing to the Legislature for the enactment

of laws, and by governing themselves and their affairs in accordance with the laws enacted by the state of New York.

This chapter 508 of the Laws of 1914 gives authority to the County Court analogous to the power that has been exercised by the courts in enforcing the judgments of the Peacemakers' Courts, as shown by some of the cases above cited. Section 5 of the Indian Law transfers to the state courts all matters jurisdiction of which is not conferred upon the Peacemakers' Court, and the validity of that section has been upheld in the cases cited in this memorandum.

Chapter 508 of the Laws of 1914 does not trench upon the immemorial customs of the Indians any more than does section 52 of the Indian Law, providing for the enforcement of the judgments of the Peacemakers' Court in the state courts. I am of the opinion that this amendment of 1914 does not trench upon the immemorial customs of the Indians any more than do section 46 and section 50, providing for the Peacemakers' Court and the review of the determination of the Peacemakers' Court by the Council of the Nation. Of course, under those customs, the Indians may have had a Peacemakers' Court and a Council, which took up under some circumstances the matters that had been before the Peacemakers' Court; but these provisions of the Indian Law must be a radical innovation on the procedure in the so-called Peacemakers' Court and Indian Councils, if there were such Peacemakers' Courts before the regulation of the same by the laws of the state. These Peacemakers' Courts, and the procedure before the Council on appeals under the Indian law, are regulated in conformity to a large extent to the practice in our state courts, and several of the steps taken in starting the action before the Peacemakers' Court, and in the trial and of the appeal, are almost precisely the same as the steps provided for in the state courts.

If the provisions of the Indian Law creating the Peacemakers' Courts and regulating the practice in the same, and regulating the practice on appeals to the Council and the practice as to returns to the Council and the hearing before the Council, are a radical change from the conditions existing in accordance with the customs of the Indians, then those provisions of the Indian Law are as radical and revolutionary as the amendment under consideration, which grants authority to appeal to this court from the determination of the Council. As appears by the authorities cited the provisions of the Indian Law creating and regulating the practice in the Peacemakers' Court, and the appeals therefrom, and the hearing before the Council, have been upheld by the courts of this state, and it logically follows that the amendment of 1914 must be sustained under the same decisions. This amendment is not distinguishable in principle from acts of the Legislature passed from time to time for many years.

In what has been said it has been assumed that the Seneca Nation of Indians may have had a court corresponding to the Peacemakers' Court prior to the enactment of the statutes of this state creating that court. Such information as I have upon the subject leads me to believe that the Indians of this state never had any such court until it was created by statute.

"They [the Indians] never had any idea of property in land. They would, consequently, never have, as in fact they never had, any common fixed interest, any one communion of rights and actions, one civil union, and consequently not any government. They know no such thing as an administrative or executive power, properly so called. They allow the authority of advice, a kind of legislative authority; but there is no civil coercion. They never had any one collective actuating power of the whole, or any Legislature or magistrates to execute such."

The above is from a communication of Secretary Pownall to the Congress of Colonies and Indian Council held at Albany, July, 1785, contained in Documents Relating to the Colonial History of New York, vol. 6, p. 896. Comments from which the same inferences are to be drawn, as must be drawn from the above quotation, are contained in a communication of Lieut. Gov. Clark, dated, New York, January 16, 1743, printed in volume 6 of Documents Relating to the Colonial History of New York, page 241; letter of Sir William Johnson, dated February 28, 1771, printed in Documentary History of New York, vol. 4, pages 432, 436, and 437; Beauchamp's History of New York Indians, page 153; and in comments by Reuben Goldthwaites in "The Colonies, 1492–1750," page 14. The conditions described by these writers can hardly be reconciled with the claim that the Indians prior to 1813 had any court, or any body of men which discharged any of the functions of a court.

On April 10, 1913, the Legislature passed an act relating to the different Tribes and Nations of Indians within this state, which is chapter 92 of the Revised Laws of New York, and this act, among other things, provides for the election by the St. Regis (Mohawk) Indians of "three peacemakers." This statute imposes upon these peacemakers various powers and duties. Among those powers and duties these peacemakers were to act as a court in disposing of certain matters relating to the persons and property of this nation of Indians. It is to to be noted that the power and duty to hold such a court was only one of the powers and duties imposed upon these "peacemakers." This statute, providing for peacemakers for the St. Regis Indians, was continued in the Revised Statutes passed in 1827 and 1828. By section 1, chapter 365, of the Laws of 1847, it was provided that:

"The male Indians residing on the Cattaraugus and Allegany reservations, of the age of twenty-one years, * * * shall assemble at one of their council houses on the first Tuesday in January in each year, * * * and * * * elect the following officers: A clerk and a treasurer for the Nation, three peacemakers, and one marshal for the Indians residing on the Cattaraugus reservation, and three peacemakers and one marshal for the Indians residing on the Allegany reservation, all of whom shall be Indians of the said Nation and qualified to vote."

The powers delegated to these peacemakers were substantially the same as the powers now delegated by statute to the Peacemakers' Court. It is my opinion that this statute of 1847 created the first Peacemakers' Court of the Seneca Nation of Indians, and that the statute of 1813 was the origin of Peacemakers' Courts among the Indians of this state. There are many provisions in the statute of 1813 indicating that the creation of the offices of "peacemakers" originated with white men, and not with Indians, and that the idea back

of the statute was that the St. Regis Indians had reached a condition where it was possible under proper guidance to accomplish something in a civilizing way by the creation of those officers. There is nothing in the statute to indicate that these officers had existed under the customs of the Indians, and there is nothing in the statute to indicate that there had been among the Indians before that time anything in the nature of a court. In the case of People ex rel. Jamerson v. John, 80 Misc. Rep. 418, 141 N. Y. Supp. 225, Wheeler, J., says:

"The Indian Peacemakers' Court is established and exists by virtue of section 46 of the Indian Law. * * * The power and authority of the Peacemakers' Court is derived purely and solely from the legislative authority conferred by this section, and it can exercise no jurisdiction or powers save such as are expressly conferred upon it by statute. * * * The Peacemakers' Court is a statutory local court created by legislative act."

I do not regard it as necessary for the disposition of this motion to determine whether or not a Peacemakers' Court of some character existed among the Indians prior to the creation of the Peacemakers' Court by statute; but I conclude, from the authorities above cited and from the statutes referred to, that there was among the Indians of this state no Peacemakers' Court, or court corresponding to the Peacemakers' Court, until the Peacemakers' Court was created by statute.

Public policy requires that this amendment should be upheld. The Indians in this state are now in a condition so that as rapidly as possible they should be made a part of the citizenship of the state. Acts like this under consideration tend in that direction. The general government is not likely to exercise whatever jurisdiction it has over these New York Indians by passing laws which will regulate their everyday affairs. As a practical proposition the state can more intelligently enact and more effectively enforce such laws than can the general government. This state has always maintained that it had the power to pass such legislation, and as time has gone on has exercised an ever-increasing supervision over the Indians of the state. Their condition to-day calls for laws dealing more fully with their everyday life. Such laws will aid in their progress and help to maintain and increase the friendly relations existing between them and the citizens of the state.

It is my opinion that these observations have a proper place in the discussion of the question now under consideration. The sovereignty of the United States over the Indians has been sustained by the courts, so far as it has been sustained, not because of grants contained in the Constitution, but because it was thought that the necessities of the situation and public policy required the exercise of such sovereignty. This fact appears in the opinions in Cherokee Nation v. State of Georgia, 5 Pet. 1, 8 L. Ed. 25, Worcester v. State of Georgia, 6 Pet. 515, 8 L. Ed. 483, and United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, the three cases most cited to sustain the proposition that the United States has exclusive jurisdiction over the Indians. In view of the fact that that sovereignty in these cases has been sustained to the extent it has been sustained on the grounds

above stated, it is proper, in the consideration of the question as to whether or not the state of New York has the power to pass laws regulating the affairs of the Indians in this state, that the necessities of the situation and the public policy involved in such legislation should be to some extent at least taken into consideration.

The arguments contained in the case of Cherokee Nation v. State of Georgia and Worcester v. State of Georgia were very appropriate to the conditions existing at the time the opinions in those cases were written; but conditions have changed, and those arguments, if they ever did apply to the conditions in this state, are not very appropriate to the conditions here at this time. The changed conditions were recognized by Congress when in 1871 it declared that in the future the government of the United States would deal with the Indians by the enactment of laws and not by the negotiation of treaties. The changed conditions have been recognized in this state, in that the state has not in recent years dealt with the Indians through treaties, but has assumed to regulate their affairs by laws enacted by the Legislature. The Indians themselves have recognized the changed conditions by asking for the enactment of laws dealing with their affairs, and by more and more conforming their conduct to the laws enacted by the Legislature of this state.

The changed condition of the Indians is, of course, manifest to every observer. Many of them have become property owners; many of them till the soil successfully, and live in houses such as the white man lives in. Many of the children go to school, and some of them are apt pupils. It can truly be said that in this state it is the call of the white man's life and not the lure of the wild that draws the young Indians whose ancestors constituted the Iroquois Confederacy. It is absurd to discuss legislation dealing with the New York Indians on the basis of conditions existing over 100 years ago. Such legislation, considered in the light of conditions existing at the present time, should be approved if the necessities of the present situation and public policy at the present time require such approval. It is my opinion that the necessities of the situation and public policy do require that the state of New York shall continue to exercise its fostering care over the Indians in this state, and continue to pass laws regulating their affairs, and continue through its courts to extend to them the right to protect their property and persons. And it is also my opinion that the recent decisions of the courts of this state cited above fully sanction the enactment and enforcement of such laws and the continuance of such policy by the state.

[2, 3] 2. Section 50 of the Indian Law requires that an appeal from the Peacemakers' Court to the Council of the Nation must be made within 20 days after the decision of the Peacemakers' Court, and it is claimed on behalf of the respondent that the appeal in this case was not taken within that time. It was upon this ground apparently that the appeal was dismissed by the Council. This question is, of course, presented by affidavits. Section 50 of the Indian Law contemplates that the hearing before the Council shall be upon the record before the Peacemakers' Court, and there is no provision for a hear-

ing before the Council upon affidavits. The amendment of 1914 authorizing an appeal to this court does not expressly provide for a review of anything except a determination of the Council made upon the evidence taken in the Peacemakers' Court.

I am of the opinion, however, that the Council, having been given the power to hear the appeal upon the merits, of necessity had the right to determine whether or not an appeal had been taken. The Council did pass upon the question as to whether or not an appeal had been taken, and made a determination upon that question, and this court is given the power to review the determination of the Council. It is true, of course, that the Council, when it made this determination, did not have before it the record of the Peacemakers' Court, as contemplated by the statute; but its determination was of such a character that it would necessarily have been the same had the record been before the Council. I am of opinion, therefore, that the Council having made a determination, and an appeal to this Court having been taken from that determination, this court has the right to entertain the appeal, and to consider the affidavits presented upon the appeal, and that upon those affidavits this court may determine whether or not the Council should have dismissed the appeal.

The appellants have produced affidavits setting out in much detail the circumstances under which the notices of appeal from the Peacemakers' Court were served. Among these affidavits is the affidavit of Mr. Seymour, the attorney. It appears from his affidavit that he prepared the notices of appeal, delivered them for service, and that they were returned to him with memoranda stating that service had been made, as he directed, and that all this was done prior to the expiration of 20 days from the decision of the Peacemakers' Court. These affidavits satisfy me that the notices of appeal were served within the time required by the statute.

[4] 3. It is also urged by the respondent that the notice of appeal to the Council was defective as to defendants Scott, because it was not signed by them. The notice of appeal was signed by the defendants Shongo, and underneath their names there was in typewriting these words, "J. M. Seymour, Attorney for Defendants." Mr. Seymour is one of the attorneys for the defendants on appeal to this court, as appears by the notice of appeal to this court. There is no provision in the Indian Law as to how, if at all, a notice of appeal must be signed, nor as to what it shall contain. The language of the statute is in these words:

"An appeal may be taken to the Council of such Nation, by serving upon the adverse party and upon the Peacemakers before whom the action or proceeding was heard a notice of such appeal."

It is my opinion that the Legislature by this language either intended that the notice of appeal should conform to the requirements of a notice of appeal from a Justice of the Peace Court, or that any paper from which the desire of the aggrieved party for a review of the determination of the Peacemakers' Court could be ascertained, would be sufficient, and either of these constructions would lead to the con-

clusion that the notice of appeal to the Council, signed as it was, was sufficient.

The suggestion that it was the intention of the Legislature that the notice of appeal should conform to the requirements of a notice of appeal from a Justice of the Peace Court is based upon the fact that, in the Indian Law governing the proceedings in the Peacemakers' Court and before the Council, there are several steps required which are the same, or nearly the same, as the steps taken in proceedings in a Justice of the Peace Court. By these provisions of the Indian Law, the Legislature has delegated to the Peacemakers' Court power to dispose of matters such as are disposed of in the Justice of the Peace Court. Such being the case, I think there is authority for construing this language with reference to an appeal to the Council as meaning that the requirements of the notice of appeal should be the same as the notice of appeal from a Justice of the Peace Court. See Black on Interpretation of Laws (2d Ed.) § 104, p. 340.

If this language is to be construed as suggested, then a notice of appeal signed by the attorney in an appellate court would be sufficient. Code of Civil Procedure, § 3046.

The other suggestion, that the Legislature intended by the language used in providing for an appeal to the Council that any paper showing the desire of the aggrieved party for a review of the determination of the Peacemakers' Court by the Council should be held sufficient, is based upon the facts that these proceedings before the Peacemakers' Court and the Council would often be taken by people without education and without means of employing attorneys; that the matters involved would often be of small importance; and that the only way that practical justice could be meted out in such courts would be to strip the proceedings of all technicalities. This, I am of the opinion, was the intention of the Legislature in providing for the appeal from the Peacemakers' Court. The notice of appeal does show the desire of the defendants to have a review in the Council of the proceedings of the Peacemakers' Court. I am of the opinion, therefore, that it is sufficient, and that it brought before the Council, and hence brings before this court, all the defendants.

[5] 4. The respondent further contends that both the Peacemakers' Court and the Council fixed the amount of costs to be paid by the defendants, that those costs were never paid, and that the payment of those costs was necessary to perfect the appeal to the Council. The items of costs as fixed by the Peacemakers' Court were as follows:

| | |
|---|---:|
| Complaint | $ 5 00 |
| First adjournment | 4 50 |
| Second adjournment ($2.25 each side) | 4 50 |
| Trial (16th day of July, 1913) | 5 00 |
| Marshal's fees | 21 20 |
| Total | $40 20 |

The provisions of the Indian Law with reference to the costs and fees, are as follows:

"Sec. 47. *Record of Peacemakers.* * * * Each such entry [in the record book] shall state * * * the amount of costs and to whom allowed. * * *

"Sec. 48. *Costs and Fees.* The fees of surrogates, peacemakers and marshals shall be fixed and determined by the Council. In every controversy before the peacemakers they shall award the costs to be paid by the party against whom their determination shall be made; the costs allowed shall be ascertained and specified by them in their determination. * * *

"Sec. 53. *The Marshal.* The marshal shall * * * be entitled to receive for his services the same fees as are allowed by law to constables in courts held by Justices of the Peace."

It is my opinion that these provisions of the Indian Law contemplate that the Council of the Nation shall fix certain costs and fees applicable to all cases, and that, such costs and fees having been fixed by the Council, the peacemakers in each case tried before them are to fix the costs and fees to be paid by the parties to the action, or one of the parties to the action, using as a basis for doing so the schedule of costs and fees fixed by the Council of the Nation. It appears from the papers before me that the Council never fixed any such costs or fees. In the absence of such action on the part of the Council, I am of the opinion that the peacemakers did not have the power.to fix the costs set out above.

[6] It is urged on behalf of the respondent that the rules and practice of the Council of the Seneca Nation provide that, to perfect appeals from the Peacemakers' Court to the Council, all costs of the Peacemakers' Court must be paid; $2 be paid for making the return, and $10 must be paid to the treasurer of the Nation. If such rules and practice have prevailed, they would not have any legal binding force until the costs had been properly fixed; and if I am right in my construction of the provisions of the Indian Law the costs in this case were not properly fixed. Although the affidavits read by the respondent stated that these were the rules and practice by the Council of the Seneca Nation of Indians, it is not stated in the affidavits that any such rules were ever formally adopted by the Council, and no such rules are set out in the papers before me. It cannot be claimed that any such rules and practice rest upon the immemorial customs of the Indians, because no one will claim that there were any immemorial customs as to the payment of costs for an appeal, or the costs for the return or the costs for the hearing before the Council. In order that any such rules and practice should have any binding force, it would be necessary in my opinion that the rules be adopted by the Council in some way authorized by the laws of the state. The Seneca Nation of Indians has a constitution ratified by the Legislature in 1900, and it is probably true that the Council of the Seneca Nation of Indians under that constitution would have authority to make rules governing an appeal to it, not in conflict with other statutes; but there are no affidavits before me showing that any such action has been taken by the Council under the provisions of that constitution.

It is claimed on behalf of the respondent that these costs were approved by the Council, but such approval, according to the affidavits

read by the respondent, did not occur until the day when the appeal was dismissed. From Mr. Seymour's affidavit it appears that he endeavored to have the Council fix some reasonable amount as the amount of the cost on the day the appeal was dismissed, but the Council refused to take any action. No resolution has been presented to me showing that the Council approved of these costs on that day or on any other day.

[7] It is my opinion that these costs on their face are exorbitant and illegal. It appears that the item of $4.50 charged for the second adjournment was not all to be paid by one party, but that $2.50 of that amount was to be paid by the respondent, without regard to the decision in the case. Therefore the total amount of the costs would not be $40.20, the amount claimed from the appellants. The marshal was entitled by law to the same fees that a constable receives, and that would be 10 cents a mile for the distance actually traveled; and in addition to the mileage, 25 cents for service of the summons, and 25 cents each for serving witnesses not exceeding four. Allowing the marshal 25 cents for serving a summons and $1 for serving four witnesses, we would still have left out of $21.20, $19.95, which would be mileage on a distance of 199½ miles. It appears from the bill of costs that the trial only occupied one day.

It is simply beyond belief that the marshal could have traveled far enough in subpœnaing witnesses and in serving the summons to earn this $19.95. I think that item on its face is exorbitant and illegal. The other items, $5 for complaint, $4.50 for an adjournment, and $5 for a trial, are much larger than any items of costs allowed in a Court of a Justice of the Peace, and I think they should be regarded as exorbitant, inasmuch as it is not clearly shown that there was any authority under the statute for fixing any such items of cost. For the reasons above stated I am of the opinion that the contention of the respondent that the appeal was not perfected, because costs were not paid, cannot be sustained.

The motion to dismiss the appeal herein should be denied.

### Motion of the Appellant for Further Return.

I am of opinion that the appellant is entitled to an order requiring further return by the Council. Before such order can become effective, it may be necessary to take some proceedings against the Peacemakers' Court; but the appellant is entitled to a further return, and therefore the order asked for may be entered.